*CJP Supp. 2 Opinion
Commission Counsel, by the direction of the Commission.
This is a disciplinary matter concerning Judge John T. Ball, Judge of the Santa Clara County Superior Court. After formal factfinding and review by the Commission on Judicial Performance (Commission), the Commission has concluded that the matter should be dismissed.
PROCEDURAL HISTORY
Formal proceedings were commenced with the service of the Commission’s notice of formal proceedings dated February 6, 1996 (and amended on Apr. 29, 1996). Special masters were appointed by the Supreme Court on May 7, 1996.[1]
Judge Ball was represented by David R. Sylva and Christopher A. Seaman of Campbell, California. The examiners for the Commission were Dennis F. Coupe and Jack Coyle of the Commission’s Office of Trial Counsel.
The California Judges Association participated before the Commission pursuant to Commission on Judicial Performance rule 131 as amicus curiae, and was represented by Ronald E. Mallen of San Francisco, California.
*CJP Supp. 3 The masters heard two days of testimony, and after affording the parties an opportunity for briefing and argument, submitted their report to the Commission on November 25, 1996. The report concluded that Judge Ball had engaged in improper action within the meaning of article VI, section 18 of the California Constitution.
After affording the parties an opportunity for briefing, oral argument was held before the Commission on January 29, 1997. All commissioners participated.
The Commission has considered written and oral arguments offered on behalf of Judge Ball and makes the following findings of fact and conclusions of law.
ISSUE
The focus of this case is canon 3(B)(2) as it appeared in 1993 which provided: “. . . A judge should not be swayed by partisan interests, public clamor or fear of criticism.”[2]
FACTUAL SUMMARY
The following facts are preface to the hearing before Judge Ball on December 17, 1993.
Dennis Collazo was convicted of felony murder in 1982. The conviction was reversed after a review by the United States Court of Appeals for the Ninth Circuit, and the matter was eventually set for retrial before Judge Ball. A plea bargain was made between the parties. The bargain was approved by Judge Ball, and in September 1993 he entered sentence under the terms of the plea bargain.
Two terms of that plea bargain are pertinent to this case: Collazo waived credit for the 11 years that he had already spent in prison under the original conviction, and he waived any right to appeal. The overall effect of the plea bargain was to reaffirm the original murder conviction and convert an indeterminate life sentence into a term of years (so that Collazo would know the exact date when he would get out of prison).
*CJP Supp. 4 Due to an error at the Department of Corrections—it gave him credit for the 11 years already served—Collazo was discharged from prison two weeks after the plea bargain. He went home to his wife in San Jose.
Judge Ball learned that Collazo was at home with his wife, and he inquired of the authorities regarding reports that Collazo had been released. The error in releasing Collazo was discovered. Collazo was rearrested and returned to prison. The arrest was performed pursuant to police procedures for arresting a convicted murderer who had escaped from prison.
Judge Ball did not order that Collazo be rearrested, nor did he participate in any way in determining how the rearrest should be performed.
Collazo’s family and friends were upset both by the government’s action in revoking his freedom and by the manner in which he was rearrested.
Collazo’s wife was active in trying to bring her husband’s plight to the public’s attention. She and other Collazo supporters wrote letters to many public figures, including one to the Governor which included some 300 signatures. Some of this correspondence was copied to Judge Ball, and in fact, he referred to the 300 signatures at the December hearing. In January and February 1994, Mrs. Collazo also complained to the Commission.
On October 27, newspaperman Trotter wrote a newspaper column deploring Collazo’s misfortune at being released and rearrested. Judge Ball was mentioned as being responsible for the arrest. Another article dated November 14, 1993, complained that a major injustice had occurred.
In the meantime, on November 4, 1993, Collazo filed a notice of appeal without specifying any grounds. The notice was filed in propria persona and requested the court to appoint counsel.
On November 23, 1993, Judge Ball ordered that Collazo appear before him for resentencing pursuant to Penal Code section 1170, subdivision (d) (section 1170(d)). Judge Ball’s order says only, “hearing pursuant to PC 1170(d).” The hearing was set for December 10, 1993.
There is substantial controversy in the record as to whether section 1170(d) could be used in a circumstance such as herein. It is a code section that allows a judge, on his own motion, to recall a matter and revise a sentence, provided that the revised sentence is no greater than the original sentence.[3]
*CJP Supp. 5 In this case, the legitimacy of Judge Ball’s section 1170(d) order is subject to scrutiny because the original sentence had been entered pursuant to a plea bargain. The negotiated plea had been entered as agreed, and Judge Ball was not free to change it.[4] Judge Ball met with the attorneys prior to the section 1170(d) hearing, and both objected to having any hearing.
The resentencing hearing took place on December 17, 1993. The courtroom was packed. The transcript of the hearing reflects a number of statements by Judge Ball. One could reasonably interpret his remarks as being an effort to counter Mrs. Collazo’s campaign and the newspaper articles critical of Judge Ball. While these remarks support the contention that Judge Ball was acting for a personal purpose in ordering and conducting the hearing, the Commission is unable to find clear and convincing evidence that, in fact, Judge Ball was acting for such an improper purpose.
DISCUSSION
The Commission has concluded that Judge Ball’s purpose in calling the section 1170(d) hearing was to allow either side to reopen the case in light of the then circumstances, and to use the power of his office to correct any errors for which the judiciary was responsible. Although counsel had indicated that they did not wish to reopen the matter, their initial views were not binding (particularly in the absence of Collazo). In the context of a section 1170(d) hearing, the court and the parties were free to consider whether something different could or should be done.
The second related question is whether section 1170(d) authorized a hearing for the purpose specified. The record shows that Judge Ball considered that issue prior to calling the hearing and that he consulted with other judges. Judge Ball in good faith attempted to determine whether a section 1170(d) hearing was appropriate. He concluded that section 1170(d) did authorize such a hearing. Thus, whether authorized by section 1170(d) or not, Judge Ball’s action was at most legal error and not misconduct.
*CJP Supp. 6 CONCLUSION
This proceeding is dismissed. This order shall be final forthwith.
Commission members Hon. William A. Masterson, Ms. Ophelia Basgal, Robert C. Bonner, Esq., Mr. Christopher J. Felix, Hon. Lois Haight, Ms. Eleanor Johns, Patrick M. Kelly, Esq., Mr. David Malcolm, Hon. Vincent McGraw, Ms. Harriet C. Salarno and Ms. Pearl West voted to dismiss the matter.

 The special masters were Justice William A. Stone, Judge Ronald B. Robie and Judge Paul H. Alvarado. They were selected by the Commission from a list submitted by the Supreme Court to hear and take evidence in this matter and to report thereon to the Commission. (See Cal. Rules of Court, rule 907. Order by Chief Justice George, dated May 7, 1996.)

 Canon 3B(2) now provides: “A judge shall be faithful to the law regardless of partisan interests, public clamor, or fear of criticism, and shall maintain professional competence in the law.”

 Witness Judge Mullins testified that he used the section one time after a defendant had appealed and filed a brief pointing out an administrative error. Judge Mullins recalled the matter, corrected the error he had made, and thus avoided the appeal.

 During the December hearing Judge Ball acknowledged that he could not change the plea bargain: “. . . [the plea bargain] was at the request, I believe, of the Court reduced to a formal plea agreement bearing the signature of both the prosecutor Mr. Waite, Mr. Vaughn, and the defendant personally having executed this document on September 1st, 1993 clearly setting forth the precise terms of this plea bargain. And I am totally unable at this time to consider a modification of that plea agreement based upon anything that has transpired subsequent to its execution. And I know of no authority nor do I know of any reason in law or logic for me to deprive the People of the benefit of their bargain.”